UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 03-208-DLB

DOUGLAS AND NANCY TURNER                                PLAINTIFFS

VS.              **MEMORANDUM OPINION AND ORDER**

MIDLAND ENTERPRISES, INC. and
THE OHIO RIVER CO., INC.                                   DEFENDANTS

*******************************

Plaintiff Douglas Turner commenced this admiralty action after he was injured while transporting Defendant's barge to his employer's unloading facility on the Ohio River. He alleges negligence under the Jones Act and general maritime law, as well as unseaworthiness of the vessel. His wife, Nancy, also brought a claim for loss of marital consortium.[1]

This matter is presently before the Court upon the parties' cross motions for summary judgment on Turner's seaworthiness claim arising out of injuries he sustained on November 8, 2000. (Docs. #32, 37). Both parties timely filed responses (Docs. #36, 46), and replies (Docs. #45, 48). The motions are now ripe for adjudication.

---

[1] This case was originally consolidated with Turner's action against his employer, CG&E (case no. 02-213). Defendants moved for, and were granted, summary judgment on Turner's Jones Act claims, maritime negligence claim relating to the October injury, and claim for punitive damages; as well as Nancy Turner's claim for loss of consortium.

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The following recitation of the facts is adopted from the Court's prior Memorandum Opinion and Order granting Defendants' motion for partial summary judgment:

This case arises out of injuries sustained by Plaintiff Douglas Turner on two different occasions in late 2000.  At the time of the events described herein, Turner was employed by Cincinnati Gas & Electric Company (CG&E) as a deckhand at its Miami Fort Station, located on the Ohio River in Cleves, Ohio.  (Doc. #37).  There, CG&E unloads coal for use in generating electricity.  *Id.* at 4.  Beginning in 2000, Turner worked in the coal yard at the Miami Fort Station, where his duties included operating conveyers, cleaning the coal storage pile, and working aboard the M/V Shawnee, the CG&E-owned vessel used to transport barges loaded with coal to its unloading facility.  (Doc. #37).

Defendants, The Ohio River Company ("Ohio River") and Midland Enterprises ("Midland"), are two of CG&E's coal suppliers that make deliveries to the Miami Fort Station.[2]  *Id.* at 4.  The delivery and unloading process can be summarized as follows: Ohio River and Midland leave their loaded barges in load fleets near the Miami-Fort plant*;* CG&E, using its own tug (the M/V Shawnee), then transports the barges from the load fleet to the unloading dock at the plant; after the barges are unloaded, CG&E returns them to an empty fleet, where Ohio River and Midland retrieve them.  Plaintiff Douglas Turner often participated in this process aboard the M/V Shawnee.

The first accident occurred on October 26, 2000, after Plaintiff returned to the unloading terminal with a loaded Ohio River barge ("October injury").  *Id.* at 4.  After

---

[2]They own the barges that carry the coal, as well as the tow boats.

securing the M/V Shawnee to the landing boat and the cables from the loaded barge to the barge shifters, Plaintiff disembarked the M/V Shawnee onto CG&E's landing boat. *Id.* at 5. While Plaintiff was traversing the ramp, the loaded barge, which was owned by Defendants, collided with the barge shifters, causing Plaintiff to lose his footing and fall onto the deck of the landing boat. Plaintiff allegedly injured his neck as a result of the fall. *Id.* The facts and circumstances surrounding the October injury are not the subject of the pending motions.

The second accident occurred on November 8, 2000, after Plaintiff and his co-worker, Arthur "Chip" Spiegel, again returned to CG&E's unloading terminal with a loaded Ohio River barge ("November injury"). *Id.* at 5. In an effort to secure the loaded barge to the barge shifter, Mr. Spiegel threw a cable to Plaintiff. Plaintiff was standing on the gunnel of the barge, holding onto its combing with one hand, when he fell and injured his left knee. Plaintiff alleges that he slipped on wet coal that spilled onto the working deck. (Doc. #55). Defendant, by contrast, contends that Plaintiff was "jerked" downward to the barge's deck when the slack in the cable caused it to drop in the water. (Doc. #37).

As a result of his injuries, Plaintiff underwent surgery to his knee and cervical spine, and is currently undergoing physical therapy. (Doc. #55). Plaintiff's wife, Nancy Turner, also alleges that she has suffered loss of consortium. *Id.* Together, they seek approximately $800,000 in damages.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *Id.* at 324. All evidence and inferences based on evidence must be considered in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986). However, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1427, 1479-80 (6th Cir. 1989).

**B. Discussion**

The parties' motions raise the following questions for the Court's consideration. First, whether Plaintiff may bring an unseaworthiness claim against Defendants where he was not one of their crew members, or employed by them. And second, whether there is a genuine issue of material fact regarding the condition of the Ohio River barge on November 8, 2000.

Factually, Plaintiff argues that the Ohio River barge was overloaded with coal, causing it to sink down into the water and become grounded in the mud. According to Turner, he and Chip Spiegel were forced to toss lines to one another that they normally would have just handed off. Plaintiff also argues that the coal was unevenly distributed, which caused the barge to list and him to fall and injure his knee. Finally, Plaintiff alleges that coal from the barge's cargo area spilled over onto the work deck and gunnel, which, along with the lack of non-skid paint, caused him to lose his footing. According to Plaintiff, all these conditions rendered the Ohio River barge unseaworthy.

4

Defendants, on the other hand, claim that Plaintiff is legally barred from bringing an unseaworthiness claim because he was neither employed by them nor a member of their crew. Alternatively, they allege that the deposition testimony of Jay Meinking, the pilot of the M/V Shawnee on November 8, 2000, creates a genuine issue of material fact regarding the condition of the barge (i.e., whether it was overloaded, grounded, etc.).

### 1. Applicability of *Smith v. Harbor Towing & Fleeting, Inc.*

Defendants' primary argument is that Douglas Turner is precluded from asserting an unseaworthiness claim because he was injured aboard a vessel on which he was not a crew member, and owned by someone other than his employer. In support, they rely on the Fifth Circuit's decision in *Smith v. Harbor Towing & Fleeting, Inc.*, 910 F.2d 312 (5th Cir. 1990). In *Smith*, the Fifth Circuit considered whether a Jones Act seaman who was injured while performing seaman's work aboard a non-employer's vessel could sue the shipowner for unseaworthiness as a *Sieracki* seaman. At the time of the injury, Thomas Smith was working a deckhand and crew member aboard the M/V Todd G, a tug owned and operated by his employer, Harbor Towing. *Id*. On the date in question, the M/V Todd was preparing to push two fuel barges owned by Chotin Transportation, Inc. to another fleeting facility, when the captain instructed Smith to board the barges and rig them together for towing. *Id*. According to the Smith, when he attempted to straighten a tangled wire cable attached to a barge winch, he slipped on diesel oil on the deck of the barge and injured his arm and back. *Id*.

Smith sued his employer, Harbor Towing, under the Jones Act and general maritime law. *Smith*, 910 F.2d at 313. He also asserted a claim against Chotin, the barge owner, for general maritime negligence and seaworthiness, claiming that the presence of diesel

5

oil on the deck and the kinked winch wire rendered the barge unseaworthy. *Id*. The district court concluded as a matter of law that Smith was not a crew member as to Chotin's barge and was owed no duty of seaworthiness. *Id*. Relying on its own precedent, the court of appeals agreed.

The court began by explaining the origins of the "*Sieracki*" unseaworthiness claim. In *Seas Shipping v. Sieracki*, 328 U.S. 85 (1946), the Supreme Court rejected the idea that a vessel owner's duty to furnish a seaworthy vessel extended only to employees, and extended the cause of action to longshoremen "doing a seaman's work and incurring a seaman's hazards." 328 U.S. at 90-94. In 1972, however, Congress amended the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) to provide that any person covered under the Act could no longer bring an action against a third-party vessel owner based upon the warranty of seaworthiness. 33 U.S.C. § 905(b). Following these amendments, courts have struggled with the question of whether *Sieracki* still survived with respect to those maritime workers not covered by the LHWCA.

While some courts have held that the 1972 amendments completely abolished the *Sieracki* seaworthiness action, the Fifth Circuit adopted a less sweeping, fact-intensive approach. *Smith*, 910 F.2d at 314. For example, the court held that a federal employee who was working as a longshoreman in the Panama Canal, and who was covered under the Federal Employees' Compensation Act (FECA) but not the LHWCA, was entitled to bring an action for unseaworthiness under *Sieracki*. *See Aparicio v. Swan Lake*, 643 F.2d 1109 (5th Cir. 1981). The court also held that a welder working aboard a vessel in a foreign country, and thus beyond the reach of the LHWCA, was entitled to *Sieracki* seaman status. *See Cormier v. Oceanic Contractors, Inc.*, 696 F.2d 1112 (5th Cir. 1983), *cert. denied*, 464

6

U.S. 821 (1983). With these parameters in mind, the Fifth Circuit refused to extend the protections of *Sieracki* seamen to Jones Act seamen injured aboard vessels on which they are not crew members. *Smith*, 910 F.2d at 314. The court reasoned that Jones Act seamen have a variety of other rights and remedies available to them. *Id*. at 314-15.

Plaintiff notes that the Fifth Circuit's decision is not binding on this Court, and urges the Court to reject it. Defendants, on the other hand, claim that the holding of *Smith* has been adopted by at least one district court within the Sixth Circuit. According to Defendants, in *Isrow v. "A Modo Mio," a 57' Azimut Spa-Avigliana Pleasure Vessel*, 112 F. Supp. 2d 641 (E.D. Mich. 2000), "the court granted summary judgment to the defendants on the plaintiff's seaworthiness claim because she was not a member of the ship's crew and did not have a substantial enough connection to the vessel on which she was injured." (Doc. #48, p.2). A closer reading of *Isrow*, however, reveals that the court's resolution of the plaintiff's seaworthiness claim turned not on the fact that she was not a crew member, but on the fact that she was not entitled to seaman status. *Id*. at 647-48.

The Court's own research reveals that *Smith* has not been universally accepted by courts outside the Fifth Circuit. *See In re J.A.R. Barge Lines, L.P.*, No. 03-163, 2005 WL 246893, at *6 (W.D. Pa. Oct. 5, 2005) (noting that the Third Circuit has not yet specifically adopted the position that a seaman cannot assert an unseaworthiness claim against a non-employer's vessel). In fact, at least one admiralty and maritime law scholar has gone so far as to state that *Smith* erred in its assumption that seamen cannot sue non-employer shipowners for unseaworthiness. *See* Thomas J. Schoenbaum, 1 *Admiralty & Marine Law* § 6-27, n.22 (4th ed.). Absent controlling case law, the Court finds no reason to depart

from the well-established rule that the warranty of seaworthiness extends to those maritime workers who can claim "seaman" status under the Jones Act. *Id*.

The Jones Act, 46 U.S.C. app. § 688(a), states in pertinent part:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.

*Id*. Whether Plaintiff qualifies as a seaman is a factual determination based upon the following two factors: 1) whether his duties contributed to the function of the vessel or to the accomplishment of its mission, and 2) whether he had a connection to a vessel in navigation that was substantial in terms of both its duration and nature such that he was exposed to the perils of the sea. *See Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995). At this stage in the litigation, the Court concludes that there is sufficient evidence from which a jury conclude that Plaintiff qualified as a Jones Act seaman on the date of his accident. For the reasons that follow, the Court also concludes that there are genuine issues of material fact regarding whether the Ohio River barge was in an unseaworthy condition on November 8, 2000. This, too, is an issue for the trier of fact. *See Cook v. Am. S.S. Co.*, 53 F.3d 733, 742 (6th Cir. 1995) *overruled on other grounds by* 522 U.S. 136 (1997).

### 2. Jay Meinking's deposition testimony

Plaintiff contends that the Ohio River barge was unseaworthy on November 8, 2000 due to the following conditions: 1) the barge was overloaded beyond its capacity, 2) the coal on the barge was unevenly loaded, 3) the presence of wet coal on the work deck and gunnel of the barge, and 4) the lack of non-skid paint. Plaintiff contends that "[t]he

8

testimony of CG&E's employees is uncontradicted: the barge on which [he] was injured was overloaded and unevenly loaded with coal. By law, this results in a state of unseaworthiness." (Doc. #33, p.4). Defendants, by contrast, argue that Jay Meinking's deposition testimony raises questions of fact as to whether the barge was, indeed, overloaded, and whether there was an inordinate amount of coal on the gunnels of the barge. Plaintiff claims that even though Meinking testified that the area where Turner was working was free of excessive coal, he also testified that he was unable to see Turner's feet. In addition, Plaintiff argues that Meinking's deposition testimony is inconsistent with the accident report that was completed on November 8, 2000, and the Court should defer to the facts as stated in the accident report.

Contrary to Plaintiff's suggestion, the Court does not have the luxury of picking and choosing among competing facts. According to Meinking's statement in the accident report, which was completed shortly after the accident occurred,

> While placing a loaded barge (Stumbo) under the hoist, Doug was at the lower quarter kevel of the barge, while reaching for the barge shifter cable Doug had his left hand secured to the gunnel and was reaching for the cable with his right hand. Dougs [sic] right foot slipped and his left knee struck the kevel. The barge had wet coal that had spilled over from the cargo area. Doug lost his footing trying to reach for the cable.

(Meinking depo, Exh. C). During his deposition, however, Meinking testified that the part of the barge where Turner was working was not covered with an excessive amount of coal. (Meinking depo pp.28, 77-78). Meinking also testified that the barge was sitting nice and level in the water, and was not grounded. (*Id*. at 28-30). This is in stark contrast to the factual allegations upon which Plaintiff's motion for summary judgment is based. Under

9

these circumstances, there are genuine issues of material fact underlying Plaintiff's seaworthiness claim against Defendants that precludes summary judgment.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that:

(1)　Plaintiffs' motion for summary judgment (Doc. #32) be, and hereby is, **DENIED**;

(2)　Defendants' motion for summary judgment (Doc. #37) be, and hereby is, **DENIED**; and

(3)　This matter is set for a **status conference** on **Thursday, March 23, 2006 at 9:30 a.m. in Covington.**

This 3rd day of March, 2006.



Signed By:
*David L. Bunning*　DB
United States District Judge

G:\DATA\Opinions\2-03-208-MSJ.wpd